# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Craig Cowan, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>Triumph Energy Partners, LLC,<br><br>      Defendant. | Case No. 23-CV-300-JAR |

## PLAINTIFF'S UNOPPOSED MOTION TO CERTIFY
## THE SETTLEMENT CLASSES FOR SETTLEMENT PURPOSES,
## TO PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT,
## TO APPROVE THE FORM AND MANNER OF NOTICE,
## AND TO SET A DATE FOR A FINAL FAIRNESS HEARING

Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com

**COUNSEL FOR PLAINTIFF**

# TABLE OF CONTENTS

Table of Contents ................................................................................................... i

Table of Authorities ................................................................................................ ii

Introduction ............................................................................................................ 1

Summary of the Litigation ..................................................................................... 2

Argument & Authority ........................................................................................... 3

    A. The Court Should Certify the Settlement Classes for Settlement Purposes .............. 3

        1. Numerosity .................................................................................................. 5

        2. Commonality ............................................................................................... 5

        3. Typicality .................................................................................................... 7

        4. Adequacy of Representation ...................................................................... 7

        5. Predominance .............................................................................................. 9

        6. Superiority ................................................................................................. 10

    B. The Court Should Grant Preliminary Approval of the Proposed Settlement ............ 11

        1. Plaintiff and His Counsel Have Adequately Represented
the Settlement Classes ................................................................................ 12

        2. The Proposed Settlement Was Negotiated at Arm's Length ...................... 13

        3. The Relief Provided for the Classes Is Adequate,
Taking into Account: .................................................................................. 14

            i. The Costs, Risks, and Delay of Trial and Appeal ................................ 14

            ii. The Effectiveness of Any Proposed Method of
Distributing Relief to the Classes, Including the
Method of Processing Class Members' Claims ...................................... 15

            iii. The Terms of Any Proposed Award of Attorneys'
Fees, Including Timing of Payment ....................................................... 16

            iv. Any Agreement Required to be Identified under
Rule 23(e)(3) ......................................................................................... 17

        4. The Settlement Treats Class Members Equitably Relative to
Each Other .................................................................................................. 17

    C. The Court Should Preliminarily Approve the Proposed Notice
of Settlement to the Settlement Classes ..................................................................... 17

    D. Appointment of JND Legal Administration as Settlement
Administrator is Proper ............................................................................................... 19

    E. Appointment of Citibank, N.A. as Escrow Agent is Proper ..................................... 20

Conclusion ............................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Amoco Prod. Co. v. Fed. Power Comm'n*,
465 F.2d 1350 (10th Cir. 1972) ......................................................................11

*Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*,
275 F.R.D. 325 (D. Kan. 2011)........................................................................ 9

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
167 F. Supp. 2d 1216 (D. Colo. 2001) ..........................................................11

*CGC Holding Co., LLC v. Hutchens*,
773 F.3d 1076 (10th Cir. 2014) ..................................................................... 9

*Cline v. Sunoco, Inc. (R&M)*,
333 F.R.D. 676 (E.D. Okla. 2019) ................................................................ 5

*D'Amato v. Deutsch Bank*,
236 F.3d 78 (2d Cir. 2001).............................................................................14

*Deitrich v. Enerfin Resources I Limited Partnership, et al.*,
No. 20-CV-084-KEW (E.D. Okla. 2022).................................................8, 16

*DG v. Devaughn*,
594 F.3d 1188 (10th Cir. 2010) ...........................................................3, 5, 7

*Horn v. Associated Wholesale Grocers, Inc.*,
555 F.2d 270 (10th Cir. 1977) ....................................................................... 5

*In re Motor Fuel Temperature Sales Practices Litig.*,
271 F.R.D. 263 (D. Kan. 2010).......................................................... 4, 11–12

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008).............................................................14

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) .................................................................... 9

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006)................................................... 11, 14, 18

*McKnight Realty Co. v. Bravo Arkoma, LLC*,
No. 20-CV-428-KEW (E.D. Okla. 2022)...........................................6, 8, 16

*McNeill v. Citation Oil & Gas Corp.*,
No. 17-CIV-121-RAW (E.D. Okla. 2019) ...........................................8, 16

*Milonas v. Williams*,
691 F.2d 931 (10th Cir.1982) ....................................................................... 5

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306, 314 (1950) ...............................................................................17

*Reed v. GM Corp.*,
   703 F.2d 170 (5th Cir. 1983) .................................................................13

*Reirdon v. XTO Energy Inc.*,
   No. 6:16-cv-00087-KEW (E.D. Okla. Jan. 29, 2018) ............................... 6

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180, 1188–89 (10th Cir. 2002) ............................................. 8

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
   749 F.2d 1451 (10th Cir. 1984) ...........................................................11

*Tennille v. Western Union Co.*,
   785 F.3d 422 (10th Cir. 2015) ............................................................. 3

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .................................................................5, 9

*Wilkerson v. Martin Marietta Corp.*,
   17 F.R.D. 273 (D. Colo. 1997) ............................................................14

**Statutes**

OKLA. STAT. tit. 52, § 570.10................................................................*passim*

**Rules**

FED. R. CIV. P. 23 ..............................................................................*passim*

**Secondary Sources**

Newberg et al., NEWBERG ON CLASS ACTIONS § 3:10 (5th ed. 2011).................................. 6

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004).............................................11

**INTRODUCTION**

After nearly eighteen months of information analyses and negotiation, Plaintiff has obtained an outstanding recovery for the Settlement Classes. Specifically, Plaintiff has reached a settlement with Defendant worth $8.2 million in cash for Plaintiff's class claims for (1) underpayment of royalties on natural gas and constituent products and (2) statutory interest owed on late payments of oil and gas proceeds under Oklahoma law.

Having reached this agreement with Defendant and recovery for the Settlement Classes, Plaintiff now respectfully requests that the Court preliminarily approve the classwide settlement. Specifically, through this Motion, Plaintiff requests the Court: (1) certify the Settlement Classes for Settlement purposes; (2) preliminarily approve the Settlement; (3) appoint Plaintiff as Class Representative for the Settlement Classes; (4) appoint Reagan E. Bradford and Ryan K. Wilson of Bradford & Wilson PLLC as Co-Lead Class Counsel for the Settlement Classes; (5) approve the form and manner of the proposed Notice; (6) appoint JND Legal Administration as Settlement Administrator; (7) appoint Citibank, N.A. as Escrow Agent; and (8) set a hearing date for final approval of the Settlement and application for an award of Plaintiff's Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and a Case Contribution Award to Plaintiff.[1] Plaintiff and Defendant have agreed to the form of the Preliminary Approval Order, which is Exhibit 1 to the attached Settlement Agreement (**Ex. 1**) and which Plaintiff will submit to the Court contemporaneously with the filing of this motion.

---

[1] Unless otherwise defined herein, Plaintiff incorporates by reference the defined terms contained in the Settlement Agreement. *See* **Ex. 1**.

1

## SUMMARY OF THE LITIGATION

On May 10, 2022, Plaintiff served a written demand to Defendant, raising concerns with Defendant's natural gas royalty payment practices and invoking Plaintiff's statutory rights to information under OKLA. STAT. tit. 52, § 570.12. After initial discussions concerning Plaintiff's claims with Defendant's counsel, the parties entered into a tolling agreement on June 15, 2022. Ultimately, the tolling agreement was extended five times while Defendant produced data requested by Plaintiff and so that the parties could continue their negotiations of a classwide settlement.

Defendant produced voluminous information and data in response to Plaintiff's requests during negotiations, including over half-a-million rows of electronic pay detail, thousands of pages of plant statements, and other data needed to evaluate Plaintiff's class claims. Plaintiff's counsel further analyzed public data regarding Defendant, including the nature of its operations, management, and leases in Oklahoma. To fully evaluate the data, Plaintiff's counsel also engaged consultants who are regularly retained to analyze and testify as to damages for the same claims Plaintiff asserted against Defendant, including underpayment of royalties on natural gas and late payment of oil and gas proceeds under Oklahoma law. Following extensive work between Plaintiff's counsel and the retained consultants, Plaintiff's counsel provided Defendant with a damage assessment for both of the classes at issue. This resulted in numerous calls and additional exchanges of information between the parties to determine if a settlement could be reached.

After nearly a year of data analyses by Plaintiff's counsel and the retained consultants, the parties agreed to mediate the claims on March 28, 2023, with experienced mediator Robert G. Gum presiding over the mediation. After conducting a full day of mediation, the parties

were unable to reach a resolution of Plaintiff's class claims. Nevertheless, the parties contin-

ued their settlement discussions and negotiations. At the request of the parties, Mr. Gum

provided a mediator's proposal on April 24, 2023. While the parties didn't enter into a settle-

ment based upon the mediator's proposal, it allowed the parties to reach an agreement in

principle to resolve Plaintiff's class claims.

On June 12, 2023, the parties entered into a Memorandum of Understanding to doc-

ument the essential terms of the Settlement. The parties then worked to memorialize the

Memorandum of Understanding into a formal settlement agreement, which they ultimately

executed on August 21, 2023, a complete copy of which is attached as **Exhibit 1** (the "Settle-

ment"). As part of the Settlement, the parties agreed to file this Litigation for settlement and

administration purposes. *See* **Ex. 1** at 12, ¶ 3.1. Plaintiff initiated the action in this Court on

September 11, 2023. *See* Doc. 2, Compl.

## ARGUMENT & AUTHORITY

### A.    The Court Should Certify the Settlement Classes for Settlement Purposes

In reviewing a proposed settlement for a putative class, the court determines whether

the action may be maintained as a class action under Fed. R. Civ. P. 23. *See, e.g.*, *Tennille v.*

*Western Union Co.*, 785 F.3d 422. 430 (10th Cir. 2015). Rule 23 examines four factors at class

certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representa-

tion. Further, Rule 23(b) examines whether common questions predominate the dispute and

whether the class action is superior to other methods.

District courts exercise "considerable discretion" in making class-certification deci-

sions. *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). The Tenth Circuit defers to a

trial court's certification ruling "if it applies the proper Rule 23 standard and its 'decision falls

within the bounds of rationally available choices given the facts and law involved in the matter at hand.'" *Id.* (citation omitted). In the settlement context, however, the court need not inquire as to trial manageability under Rule 23(b)(3)(D). *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).

Plaintiff and Defendant have stipulated to: (1) the certification of the Settlement Classes for settlement purposes; (2) the appointment of Plaintiff as class representative; and (3) the appointment of Reagan E. Bradford and Ryan K. Wilson as Co-Lead Class Counsel for the Settlement Classes. *See* **Ex. 1**, Settlement Agreement at 3. Accordingly, Plaintiff moves the Court to certify Settlement Classes consisting of:

> **Class I**
> All non-excluded persons or entities who are or were royalty owners in Oklahoma wells, where Triumph Energy Partners, LLC was the operator (or a working interest owner) who marketed its share of gas production and royalties on such marketed gas was paid to such royalty owners. The claims in this matter relate to royalty payments for gas and its constituents (including, but not limited to, residue gas, natural gas liquids, helium, nitrogen, drip condensate, or gas used off the lease premises).
>
> **Class II**
> All non-excluded persons or entities who received late payments under the Production Revenue Standards Act from Triumph Energy Partners, LLC (or its designee) for oil-and-gas proceeds from Oklahoma wells and whose payments did not include the statutory interest required by the Production Revenue Standards Act.
>
> Excluded from Class I and II are: (1) Triumph Energy Partners, LLC and the Released Parties and their respective affiliates, predecessors, and employees, officers, and directors; (2) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (3) any publicly traded company or its affiliated entity that produces, gathers, processes, or markets gas; and (4) any Indian tribe as defined at 30 U.S.C. § 1702(4) or Indian allottee as defined at 30 U.S.C. § 1702(2).

4

*Id.* at 10–11. Certification of the Settlement Classes for settlement purposes furthers the interests of Class Members and Defendant by allowing this case to be settled on a class-wide basis. The proposed Settlement Classes satisfy the requirements of Rule 23, and thus this Court should certify the Settlement Classes.

### 1. Numerosity

Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable." *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (holding a class as small as 46 sufficient). Here, the Settlement Classes consist of thousands of owners dispersed throughout Oklahoma and other states, making joinder of all Class Members impracticable. *See Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 682 (E.D. Okla. 2019) ("the proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1)."). Plaintiff has identified thousands of potential Class Members. Further, Defendant has agreed the Settlement Classes should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10–11. Numerosity is satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." A "common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Of course, "'[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.'" *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982). Plaintiff need only show a single issue common to all members of a class. *See DG*,

594 F.3d at 1195; Newberg et al., NEWBERG ON CLASS ACTIONS § 3:10, at 272-73 (5th ed. 2011).

This Court has certified several similar class actions for both classes, finding common issues existed on both types of claim. *See, e.g.*, *Kunneman Props. LLC, et al. v. Marathon Oil Co.*, No. 22-CV-274-KEW, Doc. 15 (E.D. Okla. Nov. 2, 2022) (preliminarily approving natural gas royalty underpayment class for settlement purposes); *Hoog v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-463, Doc. 306 (E.D. Okla. Jan. 11, 2023) (same); *Cowan v. Devon Energy Corp.*, No. 22-CV-220-JAR, Doc. 21 (E.D. Okla. Sept. 21, 2022) (preliminarily approving PRSA late-payment class for settlement purposes); *Allen, et al. v. Apache Corp.*, No. 22-CV-63-JAR, Doc. 23 (E.D. Okla. Aug. 1, 2022) (same); *Dasa Inv., Inc. v. EnerVest Operating, L.L.C.*, Case No. 6:18-CIV-083-SPS, 2019 WL 8163862 (E.D. Okla. Oct. 30, 2019) (same); *McKnight Realty Co. v. Bravo Arkoma, LLC, et al.*, No. 20-CV-428-KEW, Doc. 52 (E.D. Okla. Apr. 12, 2022) (same); *Reirdon v. XTO Energy Inc.*, Case No. 16-CV-87-KEW, Doc. 122 (E.D. Okla. Jan. 29, 2018) (same).

Plaintiff's claims involve questions of law and fact that can be answered uniformly for both Settlement Classes using common evidence. Plaintiff's natural gas underpayment claims involve common questions of law and fact, including whether the Class leases are subject to the implied duty to market under Oklahoma law, or otherwise prohibit deductions, and whether Defendant breached those duties by improperly deducting post-production costs and by failing to pay royalties on fuel and all constituent products. The PRSA claims turns on whether Defendant paid owners statutory interest on payments of oil and gas proceeds made outside of the timeframes established by the PRSA. Plaintiff alleges that Defendant's alleged

uniform practices for underpayment of natural gas royalties and of failing to fully pay statutory interest violates the PRSA, and those issues present common questions of fact and law for each class. Further, Defendant has agreed the Settlement Classes should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10–11.

### 3. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." But "'[e]very member of the class need not be in a situation identical to that of the named plaintiff'" to meet the typicality requirement. *DG*, 594 F.3d at 1195 (citation omitted). Rather, "[p]rovided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198–99.

Plaintiff's claims are typical of the Settlement Classes' claims because Defendant allegedly treated all owners in the same manner for purposes of natural gas royalty payments and for paying statutory interest under the PRSA. Put differently, the same legal theories and issues of fact underlie the claims of the Settlement Classes and Plaintiff because Defendant allegedly treated them uniformly on both types of claims. So all Class Members who were paid royalty on natural gas by Defendant and who received a late payment under the PRSA suffered the same injuries arising out of the same facts for each claim. Further, Defendant has agreed the Settlement Classes should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10–11. Plaintiff satisfies typicality.

### 4. Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to show they "will fairly and adequately protect the interests of the class." In the Tenth Circuit, the adequacy requirement is satisfied when (1)

neither plaintiff nor his counsel has interests in conflict with the interests of other class members and (2) plaintiff will prosecute the action vigorously through qualified counsel. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188–89 (10th Cir. 2002). No conflicts exist between Plaintiff or his counsel and other members of the Settlement Classes. To the contrary, Plaintiff shares the same incentive as the Settlement Classes to vigorously prosecute this case and obtain recovery.

Plaintiff has done so, vigorously prosecuting this case through qualified counsel. Plaintiff's Counsel are highly experienced in class actions, particularly class actions related to oil-and-gas payment claims under Oklahoma law. Plaintiff's Counsel have been appointed as lead or co-lead counsel in multiple previous class actions, including numerous class actions in this Court.[2] Moreover, Defendant has agreed the Settlement Classes should be certified for

---

[2]  *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. 16-CV-410-KEW (E.D. Okla. 2018); *Harris v. Chevron U.S.A., Inc.*, No.19-CV-355-SPS (E.D. Okla. 2019); *McNeill v. Citation Oil & Gas Corp.*, No. 17-CV-121-RAW (E.D. Okla. 2019); *Bollenbach v. Okla. Energy Acquisitions LP*, No. 17-CV-134-HE (W.D. Okla. 2018); *McKnight Realty Co. v. Bravo Arkoma*, No. 17-CV-308-KEW (E.D. Okla. 2018); *Speed v. JMA Energy Co., LLC*, No. CJ-2016-59 (Okla. Dist. Ct. Hughes Cty. 2019); *Henry Price Tr. v. Plains Mktg.*, No. 19-CV-390-KEW (E.D. Okla. 2021); *Hay Creek Royalties, LLC v. Roan Res. LLC*, No. 19-CV-177-CVE-JFJ (N.D. Okla. 2021); *Johnston v. Camino Nat. Res., LLC*, No. 19-CV-2742-CMA-SKC (D. Colo. 2021); *Swafford v. Ovintiv Inc., et al.*, No. 21-CV-210-SPS (E.D. Okla.); *Pauper Petroleum, LLC v. Kaiser-Francis Oil Co.*, No. 19-CV-514-JFH-JFJ (N.D. Okla.); *McKnight Realty Co v. Bravo Arkoma, LLC*, No. 20-CV-428-KEW (E.D. Okla.); *Rounds, et al. v. FourPoint Energy, LLC*, No. 20-CV-52-P (W.D. Okla.); *Hay Creek Royalties, LLC v. Mewbourne Oil Co.*, No. 20-CV-1199-F (W.D. Okla.); *Wake Energy, LLC v. EOG Res., Inc.*, No. 20-CV-183-ABJ (D. Wyo.); *Joanna Harris Deitrich Tr. A. v. Enerfin Res. I Ltd. P'ship, et al.*, No. 20-CV-084-KEW (E.D. Okla.); *Cowan v. Devon Energy Corp., et al.*, No. 22-CV-220-JAR (E.D. Okla.); *Kunneman Props. LLC, et al. v. Marathon Oil Co.*, No. 22-CV-274-KEW (E.D. Okla.); *Hoog v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-463 (E.D. Okla.); *Lee v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-516-KEW (E.D. Okla.); *Underwood v. NGL Energy Partners LP*, No. 21-CV-135-CVE-SH (N.D. Okla.); *Rice v. Burlington Res. Oil & Gas Co., LP*, No. 20-CV-431-GKF-SH (N.D. Okla.); *Dinsmore, et al. v. ONEOK Field Servs. Co., L.L.C.*, No. 22-CV-73-GKF-CDL (N.D. Okla.); *Dinsmore, et al. v.*

settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10–11. Plaintiff and his counsel satisfy typicality.

### 5. Predominance

Rule 23(b)(3) requires "questions of law or fact common to class members predominate over any questions affecting only individual members." "'The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'" by asking "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted); *see also, e.g.*, *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1087 (10th Cir. 2014) (same); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("Classwide proof is not required for all issues. Instead, Rule 23(b)(3) simply requires a showing that the questions common to the class predominate over individualized questions."). Thus, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted). Where, as here, Plaintiff and the Settlement Classes' claims stem from a "common nucleus of operative facts," common issues predominate and certification is appropriate. *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*, 275 F.R.D. 325, 331 (D. Kan. 2011) (citation omitted).

---

*Phillips 66 Co.*, No. 22-CV-44-JFH (E.D. Okla.); *El Dorado Minerals, LLC v. Coffeyville Resources Refining & Marketing LLC*, No. 23-CV-249-JAR (E.D. Okla.).

Again, Plaintiff alleges that Defendant systemically underpaid natural gas royalties for Class I and improperly held statutory interest owed under the PRSA for Class II. These alleged common courses of conduct gave rise to each Class Member's claim, resulting in sufficiently cohesive Settlement Classes to warrant adjudication by representation. Because every Class Member's claims arise from Defendant's alleged systematic and uniform payment methodologies, common questions predominate over any individual issues. Further, Defendant has agreed the Settlement Classes should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10–11. Plaintiff satisfies predominance.

### 6. Superiority

Rule 23(b)(3) ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In considering the superiority of a class action, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)." *Motor Fuel*, 271 F.R.D. at 269.

Superiority is easily satisfied here. To Plaintiff's Counsel's knowledge, no Class Member has filed an individual action for the Class I or II claims. Further, concentrating the Litigation in this forum is desirable. There are no anticipated difficulties managing this case as a class action for settlement purposes only. Further, Defendant has agreed the Settlement Classes should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10–11.

This is an obvious instance in which the class action is the superior method of fair and efficient adjudication.

**B.      The Court Should Grant Preliminary Approval of the Proposed Settlement**

Courts strongly favor settlement as a method for resolving disputes. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). This is particularly true in large, complex class actions such as this one. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Rule 23(e) guides the Court to approve a class action settlement when Rule 23's requirements are met and when the settlement is fair to the class members. Proposed class action settlements follow a two-step process. *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009); *see also* MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004). **First**, the Court conducts preliminary analysis to determine if there is any reason not to notify the class or proceed with the proposed settlement. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). **Second**, after the Court preliminarily approves the settlement, the class is provided notice and an opportunity to be heard at a final fairness hearing, at which point the Court considers whether the settlement should be finally approved. *See In re Motor Fuel*, 258 F.R.D. at 675.

In this Motion, Plaintiff is asking the Court to undertake that first step. "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and

11

falls within the range of possible approval." *In re Motor Fuel*, 258 F.R.D. at 675 (internal quotations omitted). While "[t]he standards for preliminary approval are not as stringent as those applied for final approval," courts frequently refer to the final approval factors to determine whether a proposed settlement should be preliminarily approved. *Id.* at 675–76.

Fortunately, Rule 23 provides clear factors for the Court to review at this first step. Specifically, the Court should consider:

> (A) the class representative and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The proposed Settlement checks each of these boxes.

### 1. Plaintiff and His Counsel Have Adequately Represented the Settlement Classes

Under this factor, the Court should consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23 advisory committee notes, 2018. Plaintiff's Counsel have engaged in significant efforts with Defendant to reach the Settlement. Plaintiff's Counsel have obtained, reviewed, and analyzed voluminous data produced by Defendant. Further, Plaintiff and his counsel have engaged experts to

review the information produced by Defendant so that the parties could appropriately consider the possibility of resolution. For months, counsel for Plaintiff worked with experts in an effort to fully understand the data provided by Defendant and develop a damages model. This included frequent meetings, communications, and exchanges of additional data and material between the parties.

Further, as discussed *supra*, Plaintiff's Counsel has served as counsel in several prior class action settlements involving the exact claims at issue in this case. Additionally, Plaintiff's Counsel is involved in several other currently pending putative class actions for the exact claims at issue in this case. All of that is to say, the efforts of Plaintiff's Counsel in other cases have resulted in a collection of significant information laying the groundwork for the favorable Settlement reached in this case. The Settlement reached in this case with Defendant is on par or exceeds the proportionate settlement values reached in similar oil-and-gas class actions. Finally, Plaintiff has remained actively involved in this effort and has thus adequately represented the Settlement Classes.

### 2. The Proposed Settlement Was Negotiated at Arm's Length

"[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Here, prior to reaching the Settlement, Plaintiff's Counsel conducted extensive investigation and research into the claims asserted, reviewed extensive data, and consulted with experts. The Settlement is the product of arm's-length negotiations between Plaintiff and Defendant and their experienced counsel at a point when Plaintiff and Defendant possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective cases.

Further, the Settlement was reached through mediation: "The completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 17 F.R.D. 273, 285 (D. Colo. 1997). An experienced mediator's involvement "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); see also *D'Amato v. Deutsch Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Here, the parties engaged Robert G. Gum, who has significant experience mediating oil-and-gas class actions like this one. Mr. Gum's integral involvement in the mediation and settlement process further assures that the Settlement is arm's-length.

The Settlement reached in this case is the product of mutual, zealous advocacy, taking into the account the relative strength and weakness of each side's case. The second factor supports preliminary approval.

### 3. The Relief Provided for the Classes Is Adequate, Taking into Account:

#### (i)     *The Costs, Risks, and Delay of Trial and Appeal*

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (internal quotations omitted).

As strongly as both sides feel about the merits of their stance, each side here recognizes serious questions of law and fact exist in this case.

Though the parties were able to ultimately agree to a settlement amount, they still vehemently disagree on numerous factual and legal issues. Defendant denies any wrongdoing giving rise to liability under the PRSA. *See* **Ex. 1**, Settlement Agreement at 36, ¶ 11.1. Defendant has entered into this Settlement solely to eliminate the burden, expense, and distraction of further litigation. *See id.* Plaintiff is optimistic about his chances of success at trial, but recognizes there are a number of significant obstacles he would still have to overcome to achieve success on behalf of the Settlement Classes. Put simply, serious questions of law and fact are still in dispute. Importantly, the meaningful Settlement renders the resolution of these questions unnecessary and provides a guaranteed recovery in the face of uncertainty.

### (ii)    *The Effectiveness of Any Proposed Method of Distributing Relief to the Classes, Including the Method of Processing Class Members' Claims*

The proposed distribution method for this common-fund Settlement will be highly effective. Pursuant to the Settlement Agreement, Defendant will provide Plaintiff's Counsel its payment history data for wells located in Oklahoma, including the names, last known addresses, and tax identification numbers of persons or entities receiving those payments. *See* **Ex. 1**, Settlement Agreement at 13, ¶ 3.2. The Settlement Administrator will make reasonable efforts to: (a) verify the last-known address of potential Class Members provided by Defendant and (b) locate current addresses of any potential Class Members for whom Defendant has not provided addresses. *Id.*

Subject to the Court's approval, Plaintiff's Counsel will allocate the Net Settlement Fund to individual Class Members who are participating in the Settlement proportionately

based on the extent of their injuries for the Class I and II claims. *See* **Ex. 1**, Settlement Agreement at 20–21, ¶ 6.2.

The Net Settlement Fund will be distributed by the Settlement Administrator as soon as reasonably possible after final approval has been obtained for the Settlement and any appeals are exhausted. The Settlement Agreement specifies deadlines for distributing the Net Settlement Fund. *See* **Ex. 1**, Settlement Agreement at 24. Plaintiff's Counsel has had this distribution method approved and utilized in other oil-and-gas class-action settlements. *See, e.g.*, *Kunneman Props. LLC, et al. v. Marathon Oil Co.*, No. 22-CV-274-KEW (E.D. Okla.); *Hoog v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-463 (E.D. Okla.); *Deitrich v. Enerfin Resources I Limited Partnership, et al.*, No. 20-CV-084-KEW (E.D. Okla. 2022); *McKnight Realty Co. v. Bravo Arkoma, LLC*, No. 20-CV-428-KEW (E.D. Okla. 2022); *McNeill v. Citation Oil & Gas Corp.*, No. 17-CIV-121-RAW (E.D. Okla. 2019).

Importantly, as opposed to many other court-approved class action settlements in federal court, the Settlement Agreement doesn't require Class Members to submit claim forms in order to receive their share of the Net Settlement Fund. On the contrary, all Class Members who don't affirmatively opt-out of the Settlement will automatically receive a check without the burden of submitting a claim form. *See* **Ex. 1**, Settlement Agreement at 24.

### (iii)   *The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment*

Under the terms of the Settlement Agreement, Plaintiff's Counsel will apply to the Court for an award of attorneys' fees no later than twenty-eight days before the Final Approval Hearing. *See* **Ex. 1**, Settlement Agreement at 28, ¶ 7.1. Plaintiff's Counsel anticipate that they will seek a fee award of no more than forty percent of the Gross Settlement Fund. Plaintiff's Counsel have obtained an excellent recovery for Class Members in the form of an

$8.2 million cash payment. Under the Settlement Agreement, Plaintiff's Attorneys' Fees are to be paid to Plaintiff's Counsel from the Gross Settlement Fund, to the extent practicable through reasonably diligent efforts by the Escrow Agent, one (1) business day following the date the Judgment becomes Final and Non-Appealable. *See* **Ex. 1**, Settlement Agreement at 28–29, ¶ 7.2.

### (iv) *Any Agreement Required to be Identified under Rule 23(e)(3)*

The parties have entered into the Settlement Agreement, which is submitted in full at **Exhibit 1**.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other

The Settlement treats Class Members equitably relative to each other. All Class Members identified will receive their proportionate share of the Net Settlement Fund based on the extent of their injuries for Class I and II claims. **Ex. 1**, Settlement Agreement at 20–21.

Because all four factors weigh in favor of the Settlement here, Plaintiff respectfully requests the Court grant preliminary approval of the Settlement.

### C. The Court Should Preliminarily Approve the Proposed Notice of Settlement to the Settlement Classes

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Additionally, Rule 23(e)(1)(B) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." In terms of content, a settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise [the] interested parties of the pendency of the [settlement proposed] and [to] afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

17

*Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry . . . is reasonableness." *Lucas*, 234 F.R.D. at 696 (internal quotations omitted).

Plaintiff has submitted to the Court for approval the Notice of Settlement, which includes a postcard notice, a notice for publication on the settlement website, and a summary notice that will be published in various newspapers. The Notice of Settlement documents are attached to the Settlement Agreement as Exhibits 3–5. As set forth in the Settlement Agreement, Plaintiff and Defendant have agreed that, no later than thirty (30) days after entry of the Preliminary Approval Order, or at such time as is ordered by the Court, the Court-appointed Settlement Administrator shall begin disseminating the Notice by sending a copy of the postcard Notice (Settlement Agreement, Exhibit 3) via first-class mail to the last known mailing address of each Class Member who can be identified with reasonable effort to do so and also post the Notice (Settlement Agreement, Exhibit 4) on an Internet website dedicated to the Settlement. **Ex. 1**, Settlement Agreement at 13. Plaintiff and Defendant further agreed that the Settlement Administrator also shall publish (or cause to be published) the Notice (Settlement Agreement, Exhibit 5) one time in each of the following newspapers: (a) *The Oklahoman*, a paper of general circulation in Oklahoma; and (b) *The Tulsa World*, a paper of general circulation in Oklahoma. *Id.* at 15. After mailing the postcard Notice of Settlement and continuing through the date of the Final Fairness Hearing, the Settlement Administrator also will display (or cause to be displayed) on an Internet website dedicated to this Settlement the following documents: (a) the Notice of Settlement; (b) the Complaint; (c) this Settlement Agreement; (d) the Preliminary Approval Order; and (e) other publicly filed documents related to the Settlement. *Id*. The Notices direct Class Members to this website for additional information. And, of course, these documents will also be available on the Court's docket.

In accordance with Rule 23(c)(2)(B), the proposed Notice will inform Class Members about the Litigation, the proposed Settlement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement. Specifically, the Notices clearly describe: (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) Plaintiff's Counsel's intent to request attorneys' fees, reimbursement of expenses, and a case contribution award; (iv) the procedure and timing for objecting to the Settlement; (v) the procedure and timing for requesting exclusion; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement. The Notices also provide Class Members with a toll-free number and email address for Settlement-related inquiries and a URL address for the dedicated Settlement website where Class Members may obtain additional information. Thus, the Notices are reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them an opportunity to opt out or to object. As such, the form and manner of the proposed Notice meets the requirements of both Rule 23 and due process. The Court should approve the Notices and the manner in which they will be delivered and communicated to the Settlement Classes.

**D.  Appointment of JND Legal Administration as Settlement Administrator Is Proper**

To accomplish the processing of requests for exclusion, effectuating the notice campaign, and the distribution of the Net Settlement Fund in accordance with a Court-approved plan of allocation and distribution, Plaintiff respectfully requests the Court appoint JND Legal Administration ("JND") as the Settlement Administrator. JND is a leading class action

administration company that has handled many complex class action settlements.[3] Further, under the terms of the Settlement Agreement, Plaintiff, Defendant, and their Counsel will work directly with the Settlement Administrator for much of the notice, administration, and distribution processes. Accordingly, Plaintiff respectfully requests the Court appoint JND as the Settlement Administrator.

### E.  Appointment of Citibank, N.A. as Escrow Agent is Proper

Additionally, Plaintiff respectfully requests the Court appoint Citibank, N.A. as the Escrow Agent. Pursuant to the terms of the Settlement Agreement, the parties mutually agreed upon Citibank, N.A. to carry out the duties assigned to the Escrow Agent. **Ex. 1**, Settlement Agreement at 5.

### CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court enter the agreed proposed Preliminary Approval Order, attached as **Exhibit 1** to the Settlement Agreement (**Ex. 1** hereto), which will: (1) certify the Settlement Classes for Settlement purposes; (2) preliminarily approve the Settlement; (3) appoint Plaintiff as Class Representative for the Settlement Class; (4) appoint Reagan E. Bradford and Ryan K. Wilson as Co-Lead Class Counsel for the Settlement Classes; (5) approve the form and manner of the proposed Notice; (6) appoint JND Legal Administration as Settlement Administrator; (7) appoint Citibank, N.A. as Escrow Agent; and (8) set a hearing date for final approval of the Settlement and application for an award of Plaintiff's Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and a Case Contribution Award to Plaintiff.

---

[3] More information about JND can be found on its website at: www.jndla.com

Respectfully Submitted,

/s/ Reagan E. Bradford
Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
Bradford & Wilson PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com

**COUNSEL FOR PLAINTIFF**


## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

/s/Reagan E. Bradford
Reagan E. Bradford